Good morning. Our first case for today is number 2024-30043, United States v. George Peterson. We will hear from Mr. Richtofen. Did I pronounce that correctly? That was actually spot on. Good morning, Your Honors. My name is Richard Richtofen. I represent the appellant, George Peterson, in this matter. Your Honors, we're here today for two distinct issues before the Court. Did the District Court commit reversible error when it denied Mr. Peterson's motion to dismiss the indictment, and did the District Court commit reversible error when it denied Mr. Peterson's motion to suppress? So just as a housekeeping, there are two issues, and the issue regarding the suppression, I believe that's been adequately briefed. I know the government has responded. I don't intend, unless the Court has specific questions for me, I don't intend to address that today. I'm not abandoning an argument. I just believe that it's been adequately briefed, and I will answer questions if required. I believe the second amendment issue is a little more pressing, and so I'll focus my time on that, if that's okay to the Court. And we use the word silencer quite a bit. Shouldn't it be suppressor? That's what I was about to say, Judge. You know, we use the word silencer in the statute and in the briefs, but it should be suppressor, because it's not like in the movies. The statute has the word silencer? I believe one of the statutes has them. I don't know if it says suppressor or muffler. It says suppressor. And so to call it a silencer is a misnomer, because— But we know that things don't silence weapons, and that that's a colloquialism. And it's my understanding— No guns know that it's called a suppressor. So let's move on. Even with a suppressor, it can still be heard 60 to 90 feet away. Yes. So, regarding the sole issue that I'm going to be arguing this morning, did the District Court commit reversible error when it denied Mr. Peterson's motion to dismiss the indictment? The basis for Mr. Peterson's motion is a challenge to the constitutionality of the pertinent statute. 28 U.S.C. 5861d, we allege, is volatile of the second amendment to the U.S. Constitution. The judge's reasons are incorrect. He found that a silencer is, in fact, not a firearm. Has any court in the country to this date held that a suppressor is a bearable arm under the second amendment? Ma'am, to my knowledge, the research hasn't happened as of yet. So nobody's held that. People have held to the contrary, though. I believe that the cases coming up now, including the one today, address it a little more specifically. And that's—and I'm—to say I'm excited about it, I think this is a very good issue for the court, and I'm glad we have oral argument today, that the statute calls it a firearm. It calls it a firearm. It's in 28 U.S.C. 5845, defines firearms, A7, it calls it—it's a silencer, it says silencer in the statute as a firearm. In fact, it's right after A6, which is a machine gun. So A7, and it says as defined in 18 U.S.C. 921, 18 U.S.C. 921, A3C, any firearm, muffler, or silencer. So they define it as a firearm there. The clean reading of the statute, additionally, the statute supplying the basis for Mr. Peterson's conviction in part said he knowingly received or possessed a firearm. It's called a firearm, the government— So the statute refers to it as a firearm, so you're saying therefore it's a bearable arm in the Constitution. That is correct. Is that a leap? No ma'am, I don't believe it is, Your Honor, because the plain reading of the language of the Second Amendment says a well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms, arms, shall not be infringed. So it's arms. The Supreme Court in District of Columbia v. Heller in 2008 defined that arms to include weapons of offense, arms of defense, or anything like that a man wears for his defense or takes into his hands or used with or to cast or to strike another, it's 581. Then in 584, they go on to say to bear arms means to wear, bear, or carry for the purpose of being armed and ready for offensive or defensive action in case of a conflict with another. Under this scheme, a suppressor should be considered an arm. Assuming, Arguenda, that because of the statute, a suppressor is an arm, and we're just assuming that for sake of your argument, does the registration requirement unduly burden Mr. Peterson's rights? This seems somewhat similar to the shall issue regimes that have previously been blessed after Bruin. And so, Judge, what I would suggest is that although it's a shall issue, which means instead of a may issue, that in 2016 in Murphy v. Guerrero, the United States District Court for the West Mariana Islands looked at a law for a weapons identification card. No one could possess a firearm without a weapons identification card. Now, that was a shall issue. You apply for it and you shall get it within 15 to 60 days. The court there said that that was too much of an infringement on a person's exercise of their Second Amendment right. They couldn't, they were held to not exercise their Second Amendment right. To analogize this to the current situation, it's, the average wait time is eight months, which is far greater than the 15 days to 60 days in that case. So where does it say that the wait time is eight months? Judge, there is, give me one moment. In prepping, and I have to find it, I have a note for it. In prepping for my argument today, I read an article that indicated. So it's not in the record. It's just a common knowledge or something you're trying to get us to take. Do we need to take notice of that or? Your Honor, if need be, I can supplement the record with the extra reading that I did. It's an article. So you're saying it takes a long time, and so therefore it is a burden. That is an unconstitutional burden. If 15 to 60 days is unreasonable, up to eight months is definitely unreasonable. If we were to agree with you, would we be creating a circuit split in light of the Tenth Circuit's opinion in United States v. Cox? So Judge, I believe that, should you agree with me, that you'd be interpreting the Constitution consistent with the plain text of the Constitution. Right, but would we create a circuit split? Judge, I guess that's possible. It's possible? Do you have some way to distinguish the Cox case, or maybe you're not familiar? Judge, I must be honest, I'm not familiar with the Cox case, I apologize. That's fine. We have to keep up with the circuit splits and things, and there are rules about precirculating opinions if we're creating a circuit split and all of that sort of thing. And so, are we proceeding with the assumption that it is a firearm? Or should I explain why we believe that it still must be considered a firearm? Probably you should explain that. Counsel, the Chief has given you some argumental arguments, but everything is still open, so I think you need to explain that. I appreciate that, Judge. Thank you. I just wanted to make sure I didn't . . . Do you not want to draw the ire of the Court? No, you haven't yet made your argument. Except to say that it's the statute language, and you have said that. So it's said that a suppressor alone cannot cause harm. On its own, it's not a firearm. It's an attachment to a firearm. Its sole reason, sole purpose for being, is to be attached to a firearm. It's, for lack of a better phrase, it's a firearm by destination. That's its purpose. Similar bullets on their own cause no harm. But . . . But so, a bump stock, though, is not a firearm, and its sole reason for existence is to be attached to a firearm to make it easier and steadier and all of that. Judge, it's my understanding that this circuit, as Your Honor is aware, reversed a ban on bump stocks. Right. But that was not because it was an arm. It was because the regulation didn't match the statute. Absolutely. And I understand that. I'm aware of that here. And I explained this to my client, who was quite excited about that, that this is more like a shall issue, issue that he's addressing. And what I'm going to suggest is that a bullet is a necessary component. A bullet is a necessary component. The Ninth Circuit in Jackson versus City and County of San Francisco in 2014 looked at an ordinance that banned the sale of hollow point bullets. Now, a bullet is sufficient for a gun to operate, a bullet. A hollow point bullet is a specialized bullet. It's a different bullet. You need a basic bullet. You don't need a specialized bullet. And so there they said that the right to possess a firearm for protection implies the corresponding right to obtain bullets necessary, including a hollow point bullet. So the argument that a suppressor is not necessary for the firearm to operate, a hollow point bullet is not necessary for the firearm to operate. Only a bullet. Additionally, and I'm 20. What cases have said that a hollow point bullet is considered a firearm? I mean, an arm. It's afforded Second Amendment protection, Judge. What cases said that? Jackson versus City and County of San Francisco. 764 Federal 3rd, 953 Ninth Circuit in 2014. That the sale of hollow, I think the holding was the sale of hollow point bullets infringed on a gun or the Second Amendment rights. And I suggest that the analogy there is a hollow point bullet is a different kind of bullet. It's an extra bullet. It's not just a basic bullet, which is all you need. Additionally, in Zell versus City of Chicago, here it wasn't even an item. It was a privilege to go to a shooting range. So the city ordinance prohibited private citizens from using shooting ranges within the city limits. There, the court concluded that a shooting range was not categorically unprotected by the Second Amendment. That the right to possess and use your Second Amendment right with firearms also includes the right to be proficient in that use. And in United States versus Middle and Supreme Court, history indicates that arms for Second Amendment purposes includes not just the firearm itself, but also the proper accoutrements that render the firearm useful and functional. And so here, it renders the firearm useful and functional. And we believe that the district court was incorrect when it found that a suppressor is not a firearm. Because of that, the district court never went to the second part of the argument, or part of the analysis as outlined in Bruin, that is the regulation in question consistent with the nation's historical tradition of firearm regulation? And I would ask this court to do that same argument, or that same analysis now, that there's no historical comparison that we can make to a suppressor from 1791. There's no such thing. The first actual regulation is in 1934, much later regulation. Suppressors were first designed in 1909. And the inclusion, the NFA was meant to keep machine guns out of the hands of gangsters. That was the purpose and design. And reading the legislative information available, that in its inclusion of silencers, and I believe the United States versus Anderson, the Fifth Circuit indicated that the inclusion of a silencer was striking because no actual data or information was presented as to the use of silencers for lawful or unlawful purposes. It wasn't said there was nothing to show why it would be included. And the courts have said that to the extent latter history contradicts what the text says, the text controls. That's in Bruin at 2137. Supreme Court said that if it doesn't contradict the text, the text controls. And here, until 1939, there's nothing about suppressors. So there's no historical. Historically, my reading has indicated that the type of regulation the colonies had was about who could have them. Indians couldn't have them. Slaves couldn't have them. That it was in South Carolina, 1943, required guns to be carried for protection against insurrections and other wicked attempts of slaves. Also, ownership to certain groups, such as Native American slaves, indentured servants, and foreigners. It seems like the original scheme of gun control was citizens. Our people want our people to have the guns. American citizens, they can have the guns. And reading indicated that upon appearance here in the United States then, if you had a gun, you had to register who you were that you had a gun. I ask you a quick question about the probable cause for the multiple filing requirement violation. Was there, in fact, probable cause for that? And so, Judge, it's my understanding that the agents went there and purchased several guns. And the multiple firearm form was not filled out. What I'm suggesting is, and I see that I'm, if I can finish my thought, I see that I'm almost out of time. No, please go ahead and that's the second thing you argued about in your brief. And I want to make sure we. And so, the argument is that the suppression issue, it was a paperwork issue. They were aggrieved that Mr. Peterson, as an FFL, did not do the proper paperwork. So when they ascended upon his house, they seized paperwork, which I concede is OK. They seized computers, which once again, goes to paperwork and record keeping. Then they proceeded to seize his inventory, over $500,000 worth of inventory. They seized his personal guns. Right, but if probable cause existed, then they could do that. Well, once again, the probable cause for that is speculative at best. Mr. Peterson may or may not have filled out those forms. But the agents, based upon their purchases, they indicated there were straw purchases. And reading the warrant, that's not really supported by the warrant. They indicated several things in the warrant, and that's one of our. So you don't concede that, and you think that's very much up for grabs? That is correct, Your Honor. Thank you. You've saved time for rebuttal, sir. Thank you, ma'am. Mr. Berman. May it please the court, David Berman for the United States. Judge Elrod, the first question you asked was, has any court ever held that a silencer is a bearable arm? No court has. By my count, there's been over 20 federal courts that have held that a silencer is not a bearable arm. Why does the statute call it a silencer? That was perplexing to me. So that may be a label of legislative convenience. I don't know. But the argument that the statutory definition, that by labeling something, by labeling a silencer a firearm, makes it an arm, that's directly contrary to Supreme Court precedent. In Heller, Bruin, and Rahimi, the Supreme Court has said the meaning and the scope of the Second Amendment is fixed at the time of ratification. So just like Congress or any state legislature cannot restrict the scope of the Second Amendment, it can't come along 130 years later and expand the scope of the Second Amendment by labeling something. So I think that argument is a non-starter. So you can't add to it by statute of what constitutes an arm. That's right. And that's in your best cases for that. You cited several cases just now. So Heller, Bruin, and Rahimi have all said that the scope of the Second Amendment codified a pre-existing right. And the scope of the Second Amendment is the scope it was understood to have at the time that people adopted it. What about the argument that other accoutrements of weapons could count as bearable arms, such as hollow point bullets and things such as that? I agree that the exercise of the Second Amendment right includes things that are necessary to exercise that right, like ammunition. The Jackson case that defense counsel was talking about, I think the holding in that is ammunition is protected, but not specifically hollow point bullets. That's my memory. But either way, a silencer is not necessary to exercise your Second Amendment right. What about the privilege to go to a shooting range? I think it depends on the facts. But I would agree that to use a firearm safely for self-defense, you need to be able to practice using that firearm. There should be access to a shooting range, which is what the Seventh Circuit held. OK. Do you have to parse whether the thing is actually necessary to exercise your Second Amendment right or not? Is that what we're doing in this exercise? Yes, it would have to be necessary to exercise the right. Would we be creating a circuit split in light of the Tenth Circuit decision in United States v. Cox if we were to rule that a suppressor was a bearable arm? Yes. And it would be, by my count, over 20 federal courts have held that it's not a bearable arm. But is it only one circuit? It's only one circuit, yes, Your Honor. The Eleventh Circuit, and I believe the Eighth Circuit, on plain error review have held that it's not. And that's another question I have. Are we reviewing the district court's constitutional determination de novo or for plain error in this case?  And Your Honor, I'd like to, because a silencer is not a bearable arm, the court doesn't need to reach this second issue of whether the registration requirement infringes on the Second Amendment right. But I think it's clear that it is a permissible shall issue licensing regime. Why, if it takes so long? Do you agree that it takes so long? No, it doesn't. It doesn't take eight months? That's a long time. I agree that eight months is a long time. Your Honor, the eight months that Mr. Peterson alleged in his appellate brief has no citation. In the district court, he did allege that the waiting processing time is eight months. He cited to a website called silencershop.com. That's a footnote 29. If you look at that footnote, it says last access in June of 2019, over 5 and 1 half years ago. If you go to that website today, it says the average processing time for a Form 4, which is what you would submit if you want to buy a silencer from an FFL, from a federal firearms licensee, the average processing time is a few days, with a median of five days, and returns as quickly as one day. If you go to the ATF's website, they have- Can we use all these things? Are we allowed to look at any of these things? I think that's a matter of, yes, the court can take judicial notice, but because that's Mr. Peterson's own site in the district court, the reason why we didn't put any processing times in our brief is that Mr. Peterson admits that he did not attempt to register the silencer. So he's bringing an as-applied challenge, so he can't allege that any waiting at any processing time would infringe his Second Amendment rights. He's didn't try to do it. The court can also look at the ATF's website. It doesn't break it down by silencer, or grenade, or missile, or any of the other NFA items, but the average processing time for both Form 1, which is if you want to make an NFA item in Form 4, if you want to buy one, is 26 days. And again, that includes things like short barrel rifles and missiles. Also, it seemed to me, taking judicial notice of any of that is questionable at best. It seems to me another way to look at this is no evidence in the record of how long it takes. So it's really not an issue before us. Yes, Your Honor, and in McRory, where this court held that background checks are presumptively constitutional, it put the burden on the challenger to establish that it is unconstitutional. So because Mr. Peterson has not put anything in the record, I agree that that's another reason why his Second Amendment challenge must fail. And if there are no- If we were to reach that issue, if we wanted to reach the unduly burdensome issue, you've just said that there are not facts to show that it's unduly burdensome. But would we analogize to the shell issue regimes blessed by Bruin? Yes, so McRory was actually dealing with a federal background check, and it said that's presumptively constitutional. Here, that's what this licensing regime is. It's the same questions you would answer on one of those background checks. Are you an alien? Are you a felon? Have you been committed to a mental institution? The only additional requirements are your fingerprints and a photograph and a $200 tax. So it's exactly the type of background check that's already been, that this court has already held as presumptively constitutional. And because there's no evidence as to the waiting, to the processing times, Mr. Peterson cannot succeed. Is it true that if probable cause existed for the multiple filing requirement violation, then the whole second issue would go away? Yes, and here we don't even need probable cause because we can rely on good faith, and Mr. Peterson has not ever brought up good faith, has not challenged good faith. And y'all relied on good faith throughout this proceeding? Well, that was our first line argument, but it's clear that there was probable cause here for all four offenses, and he does concede, I mean, you just look at the district court brief and his appellate brief, he does concede that there was probable cause for the multiple sales reports. The attachment B authorized the ATF to seize firearms and other weapons related to the selling of firearms. There is an argument in the brief closing counsel that the information, in part at least, in the warrant application was stale. I think that only applies to one particular allegation in there. What is allegedly stale about the application? Mr. Peterson's argument is that because his federal firearms license was issued in 2018, and the evidence presented in the application, in the affidavit, was that he was illegally selling firearms from his home in 2022, that there could have been some intervening letter to the ATF or something of that effect where Mr. Peterson admitted that he was gonna violate the law and sell firearms from his home, but he doesn't, of course, he doesn't cite any kind of notice, and there's no evidence that there was any other notice given in that intermediate time. Sometimes, we might not follow all the other courts. Could you address the Bruin analysis in the first instance, just in the text history tradition? Yes, so the- And I'm not foreshadowing, I'm just assuming, arguing though, that we weren't persuaded by the 30-some-odd other people who have been very fine courts who have dealt with this. I understand, Your Honor. So, step one of the Bruin analysis is whether it falls within the plain language, the plain text of the Second Amendment, and that includes a few different considerations. One, is it a bearable arm that's in use for a common, in common use for a lawful purpose like self-defense? That's all at step one, and that is the challenger's burden. That's what this court held in Rahimi. Of course, the Supreme Court reversed step two of Bruin, but it didn't impugn what this court did at step one of Bruin. I think there's an intermediate question before you get to step two, which is, if whatever the item is is held to be a bearable arm that's constitutionally protected, does the regulation infringe on that right? And that's the Bruin line of cases, and then this court in McRory, which said it shall issue regimes are presentably constitutional. And if it does infringe, then you get to Bruin step two, and you have to determine whether it fits within the nation's historical tradition of firearm regulation, and you look at the how and why the modern regulation burdens the conduct. So you believe we don't get into the historical tradition in this case, because it fails at step one and step two? Yes, Your Honor. What if we were to look at the historical tradition? What does the record say, or the briefing say on that? Well, the evidence we include, so this is a registration requirement, and so we cited a Virginia statute from the 17th century, which required the recording of guns and ammunition. And then we cited more generally the transfer restrictions. So the colonial governments have always regulated the transfer of firearms. And here, because Mr. Peterson at the time was not a prohibited person, all we're looking at is the actual scheme itself, the regulatory scheme. And all it's doing is imposing a background check to condition the transfer of firearms to make sure they're going to the hands of lawful, law-abiding citizens. So it sort of blends. If we were to say, aha, you're using the term firearm, how does that affect this? Well, I'm using the NFA's statutory definition of firearm, which also includes rockets and missiles, but does not include handguns. So I should say NFA-regulated items is a more precise way to say that. But I would say that the historic, Bruin step two here really bleeds into that intermediate step of whether it's, whether the regulation infringes on the Second Amendment right. So it's here, because these kinds of laws that the Supreme Court and this court have held are presumably constitutional, I just don't think you need to reach the historical analogs. Okay, and unless there are any further questions, I'll rest on our brief. Thank you. You've saved time for rebuttal. Just, if it pleases the court, in no particular order, in relation to the suppression issue, because questions were asked about that, it bears noting that Mr. Peterson came to light, or was noticed by the ATF, because of a time-to-crime issue, which is the time between the sale of a gun and the inclusion or finding of a gun in a crime. So a gun is found in a crime, they do a trace of a gun, and they see that the gun goes back to PDW FFL, and it was sold on this date, and it was in a crime on this date, a very short time to crime, a large number. During his, and once again, this is not in the brief, but it's part of the record, that during the hearing, the continued custody hearing, the case agent couldn't answer questions like, okay, so the time-to-crime, how many of those guns were involved in a second or initial crime between the sale and the subsequent crime, like a theft or a burglary? And he didn't know the answer. And I asked, would that change your opinion? Well, I don't know, I don't know. And I think that's something that's important that they should have known. Additionally, in the seizure of the guns, Judge Magistrate Roby said that in her opinion, based upon everything she heard, that the seizure of all the guns and all the weapons was a government overreach. And it bears noting that Mr. Peterson received all of his 95% of the weapons back, including his personal weapons. The muffler, the suppressor was found in a safe in his bedroom in a closet, not with the other weapons. And it wasn't for sale, it was his own personal item. And I would draw attention to this, in this very court, in a concurring opinion, Judge Willett in Mock versus Garland said that the ATF can identify nothing in any historical tradition requiring an ordinary citizen to endure lengthy, costly, and discretionary approval process just to use an accessory that makes an otherwise lawful weapon safer. Additionally, there's no evidence of relevantly similar founding era regulation creating a lifetime disarmament for an individual who failed to fill out paperwork and pay a tax. And so I believe that that's important on the suppression issue. The judge expanding, I don't, I love what I do. And I worship at the altar of the court because this is important. In the legislature, they legislate. This not, in my opinion, humbly, it's not this court's job to legislate. It's a job to interpret the constitution. The way you get in here is constitutional question, federal question, diversity. That's it. And so this is a constitutional question. I believe it is the court's duty to look at constitutional issues because the constitution, if we take the government's argument that what the constitution says, and that's all you get, well, some several hundred years later, that doesn't work. And the constitution is a living and breathing document because of the individuals who interpret it, all the districts and the individuals who grade the district's paper, the Supreme Court of the United States. That's who interprets the constitution. And I suggest to the court that this issue is ripe and it's ripe for the court to decide that this statute is unconstitutional, that a firearm based upon the whole, that a suppressor based upon the scheme that's laid before the court and what the districts have said is, should be considered a firearm, a bearable arm. And if it's not, it should still be afforded the protection that the Second Amendment offers. And the courts, and although the government never reached that argument, saying that it's a dangerous instrument, dangerous and unusual, it bears noting that large caliber magazines holding more than 10 rounds are far more dangerous than a suppressor. And they're only regulated in 14 to 50 states. Laser sights, which improves the accuracy of a firearm, 100%, it's my reading of the law, is regulated in Chicago. There are more regulations to just laser pointers than there are to laser sights on guns. And so I suggest to the court, they can offer no evidence, statistical otherwise, indicating that suppressors are unusual and dangerous. And I ask the court to grant Mr. Peterson the relief sought. Thank you very much, your honors. Thank you very much. We appreciate your argument today and the argument of the government's counsel. And it's been very helpful, both arguments, and the cases submitted. Thank you.